UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **KETTERING ADVENTIST HEALTHCARE**<br>1 Prestige Place<br>Dayton, Ohio 45342<br><br>**Plaintiff,**<br><br>vs.<br><br>**JADE DESIGNS, LLC, D/B/A FULLY PROMOTED**<br>1223 W. Eisenhower Boulevard<br>Loveland, CO 80537<br><br>and<br><br>**JENNIFER SNYDER**<br>2660 Susan Drive<br>Loveland, CO 80537-6804<br><br>**Defendants.** | Case No.:<br><br>Judge:<br><br><br>**JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

Plaintiff, Kettering Adventist Healthcare, doing business under its registered trade name, Kettering Health Network ("KHN"), for its Complaint against Defendant, JADE Designs, LLC d/b/a Fully Promoted and Jennifer Snyder (collectively "Fully Promoted"), states as follows:

### NATURE OF THE ACTION

1. This matter arises out of Fully Promoted's sale of over $1 million worth of counterfeit personal protective equipment to KHN at the height of the COVID-19 pandemic. Specifically, Fully Promoted falsely represented it was able to provide certified N95 masks manufactured by 3M when, in fact, it could not and provided counterfeit masks instead. Despite

this fraud having been uncovered, Fully Promoted refuses to return the more than $1.2 million it received from KHN.  KHN brings claims for fraud, conversion, breach of contract, negligent misrepresentation, replevin, and unjust enrichment and seeks compensatory and punitive damages.

## PARTIES, JURISDICTION, AND VENUE

2. KHN is a non-profit corporation duly incorporated under the laws of the State of Ohio.

3. JADE Designs, LLC d/b/a Fully Promoted is a limited liability company formed under the laws of the State of Colorado and whose members, on information and belief, are individuals domiciled in and citizens of the State of Colorado.

4. Jennifer Snyder is an individual who, on information and belief, is domiciled and resides at 2660 Susan Drive, Loveland, CO 80537-6804 and is the managing member of JADE Designs, LLC d/b/a Fully Promoted.

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and there is complete diversity between the parties.

6. Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c) because, *inter alia*, the events and/or omissions giving rise to this action occurred in this judicial district and, pursuant to 28 U.S.C. §1391(c), Fully Promoted does business in this judicial district.

7. KHN demands the right to a trial by jury in this matter.

## FACTS

*KHN Requires NIOSH-Certified N95 Masks to Best Ensure Patient and Employee Safety*

8. KHN is a network of nine hospitals, one college and over 120 outpatient facilities serving southwest Ohio. KHN's patients have access to high quality maternity care, state-of-the-art cancer fighting technology, Ohio's leading heart hospital, as well as revolutionary brain and spine surgery. With more than 12,000 employees and 2,100 physicians, KHN is committed to transforming the healthcare experience with world class health services for every stage of life.

9. In the first quarter of 2020, KHN, along with healthcare providers across the world, faced the prospect of a systemic shortage of personal protective equipment ("PPE") as a result of the burgeoning COVID-19 crisis.

10. The Occupational Safety and Health Administration ("OSHA") requires healthcare organizations, like KHN, to supply PPE, including appropriate respiratory protection, to employees providing direct care of patients diagnosed with or suspected or having certain infectious diseases like COVID-19. N95 masks are an approved form of respiratory protection so long as they are evaluated, tested and approved by the National Institute of Occupational Safety and Health ("NIOSH").

11. To be a NIOSH-certified N95 mask, the mask must have been designed and tested to filter at least 95% of airborne particles. NIOSH certification is considered a gold-standard for safety.

12. The process for a manufacturer to receive NIOSH-certification for its masks is a time-intensive one—the NIOSH-certification requirements are set forth in 42 C.F.R. § 84. To receive certification, the manufacturer must provide to NIOSH various tests, drawings, packaging, label copy, as well as detailed user instructions, and information on both product quality and quality-control standards for its manufacturing facility. The quality control plan

3

must be designed to ensure that the facility meets certain specifications and employs the required inspection and testing of the finished product.

13. NIOSH certification is an extensive process and it can take several months for NIOSH to review and certify a manufacturer's application for NIOSH certification.

14. 3M is one such manufacturer that has undergone this certification and is a highly-reputable source of NIOSH-certified N95 masks.

15. Given NIOSH's robust review and certification process, the possibility of additional, new manufacturers developing the necessary procedures, requirements, and infrastructure to meet the stringent requirements to support NIOSH-certification during the early days of the COVID-19 crisis was highly unlikely.

16. Recognizing the potential for a long-term critical shortage of PPE, KHN's buyers communicated with their networks of vendors and potential vendors to identify and secure potential sources of PPE, including the critical NIOSH-certified N95 masks.

*Fully Promoted Offered to Supply NIOSH-Certified N95 Masks*

17. In March 2020, KHN began to communicate with Fully Promoted—a potential vendor with whom KHN had not done business before.

18. Fully Promoted held itself out to KHN as a source of PPE, including legitimate N95 masks. Relying on these representations, KHN contacted Fully Promoted in March 2020 to inquire into the purchase of 30,000 N95 masks.

19. Responding to KHN's inquiry, Fully Promoted was quick to represent to KHN that it was able to provide N95 masks.

20. On March 19, 2020, Fully Promoted sent an email to KHN stating that it had the "official word on the N95 masks," and that it could provide 30,000 N95 masks for $86,700.00.

21. On March 20, 2020, Fully Promoted provided Order Confirmation #30985 and requested that KHN wire to it the full purchase price of $86,700.00. A true and accurate copy of the March 20, 2020 Order Confirmation is attached as Exhibit A.

22. In good faith reliance on Fully Promoted's representations that it had readily available, legitimate N95 masks, KHN wired Fully Promoted the full purchase price of $86,700.00 on or about March 23, 2020.

23. Fully Promoted represented that this initial order of masks would be delivered within fifteen days.

24. Contrary to its representations that it had access to 30,000 N95 masks, Fully Promoted did not have any masks available for sale or a readily available supply. Its representations regarding such availability were false. Indeed, none of the 30,000 masks were ever delivered, despite KHN's full payment of $86,700.00 to Fully Promoted, and KHN's repeated attempts to secure delivery over the next several months.

25. However, at the time, believing it had secured a new pipeline for NIOSH-certified N95 masks, KHN was eager to utilize Fully Promoted to secure a larger supply of NIOSH-certified N95 masks to ensure its patient and employee safety through the COVID-19 crisis. Accordingly, within days of its initial order of NIOSH-certified N95 masks, KHN inquired about the possibility of ordering an additional 300,000 NIOSH-certified N95 masks.

26. On or about March 24, 2020, Fully Promoted represented that it was capable of securing the 300,000 additional N95 masks in short order.

27. On March 28, 2020, KHN sent an email to Fully Promoted reiterating that Fully Promoted needed to "make sure they are niosh approved." Two hours later, Fully Promoted

5

responded, without equivocation that the masks Fully Promoted would be providing "are NIOSH and FDA approved."

28. On March 30, 2020, Fully Promoted assured KHN that it (Fully Promoted) was working with one of its "preferred vendors" to provide the requested masks; that Fully Promoted had worked with this vendor "on a regular basis;" and that Fully Promoted was providing this information in order that KHN would "feel comfortable" working with Fully Promoted.

29. Fully Promoted also provided a specification sheet that reiterated that the masks would be "NIOSH" certified, and also provided an FDA "Certificate of Registration."

30. Fully Promoted knowingly misrepresented that the masks it could provide to KHN were FDA and NIOSH certified, with the intent that KHN should rely on those representations.

31. KHN agreed to the additional purchase and Fully Promoted issued a purchase order confirming KHN's purchase of 300,000 additional N95 masks for an additional payment of $1,077,900.00.

32. On or about March 28, 2020, Fully Promoted claimed that the additional order of masks 300,000 masks would be fully delivered by the end of April 2020 via three partial shipments, with the first to be delivered within two weeks, the second to be delivered a week later, and the fourth, a week later, but demanded that the full purchase price of $1,077,900.00 be wired up front.

33. Again, in good faith reliance on Fully Promoted's representations, on or about March 27, 2020, KHN wired to it the purchase price of $1,077,900.00. (The March 23, 2020 and the March 28, 2020 orders are referred to collectively as the "March 2020 Order".)

34. Following payment, on April 7, 2020, Fully Promoted represented that the March 2020 Order would be delivered in four separate shipments by the beginning of May 2020.

### *Fully Promoted Refuses to Deliver the Purchased Masks*

35. Despite having received full payment for 330,000 NIOSH-certified, N95 masks at a total cost of $1,164,000, Fully Promoted failed to deliver anything.

36. Instead, Fully Promoted engaged in a months-long campaign of stall and delay tactics, repeatedly representing that it was working directly with various reputable manufacturers, including Honeywell and 3M, to deliver the purchased N95 masks to KHN.

37. Within days of receiving the full purchase price, Fully Promoted claimed the masks were undeliverable due to certain transportation issues.

38. When asked about a refund for the March 2020 Order, Fully Promoted stalled by claiming that Colorado state senator Cory Gardner was looking into the matter as well as "a legal representative at the White House." On information and belief, these assertions were false.

39. Towards the end of April 2020, Fully Promoted claimed it had located additional N95 masks, that it was sourcing them directly from Honeywell, and that it was "negotiating the delivery timing of the masks to [KHN] next week."

40. However, the following week, Fully Promoted claimed there was an error on the purchase order delaying delivery, and by the first week of May 2020, it still failed to provide the promised masks.

41. On information and belief, Fully Promoted never sourced any N95 masks from Honeywell, and its representations to KHN regarding its communications with Honeywell were false.

42. In early May 2020, Fully Promoted attempted a new tactic, claiming that it was now working directly with 3M, a highly reputable manufacturer of NIOSH-certified N95 masks.

43. Over the next four months, Fully Promoted repeatedly and falsely represented that it and Fully Promoted's corporate office were working closely with 3M to secure verified NIOSH-certified N95 masks.

44. For example, on June 2, 2020, Fully Promoted wrote that it was working closely with 3M and that it "had a response from [3M] on sending lot numbers and shipping information" and, on June 15, 2020, claimed it "had another meeting with the attorneys for the 3M deal."

45. In another example, on June 17, 2020 Fully Promoted represented that delay owed to the fact that "fraud is so bad with 3M product they are over the top particular about every detail and require huge amounts of documentation." Following up on that email, Fully Promoted claimed it was it was in "regular communications with the [3M] attorneys," that the attorneys were from the law firm Holland & Knight, and that the ongoing delay was merely the result of "paper pushing and them vetting [Fully Promoted] as a corporation."

46. Further, on July 7, 2020, Fully Promoted further represented that it continued to be in "communication with [3M and its attorneys] almost daily."

47. Similar communications and representations continued through July 2020, with Fully Promoted continuing to represent its close connections with 3M, robust vetting process, and ability to deliver the requested masks.

48. These representations were repeated and reinforced by other representatives of Fully Promoted during a conference on or about July 20, 2020.

8

49. In August 2020, KHN identified an alternative source for NIOSH-certified N95 masks, informed Fully Promoted of the same, and requested a full refund.

50. Nearly three weeks later, following additional delays, Fully Promoted partially refunded KHN's purchase amount for the March 2020 Order, but still withheld $86,700.00 without any explanation.

51. Thereafter, Fully Promoted encouraged KHN to rely on it again for PPE by reassuring KHN that Fully Promoted's "corporate office has been able to acquire the 3M 1860's [N95 masks] so if the need arises again in the future please let me know."

52. Despite the passage of nearly a year from the original March 2020 Order, and eight months after KHN's demand for a refund, Fully Promoted has still failed and refused to return $46,700.00 of that purchase.

*KHN Orders an Additional 300,000 3M N95 Masks During the COVID-19 Second Wave*

53. In the fall of 2020, the United States experienced a second wave of the COVID-19 pandemic.

54. Once again, KHN's need for securing sufficient PPE to properly protect its patients and employees became a paramount concern. Accordingly, KHN's employees in charge of buying were again instructed to canvass their supplier networks in an effort to secure the necessary NIOSH-certified N95 masks.

55. Having falsely represented to KHN over a period of several months that 3M had vetted Fully Promoted and that Fully Promoted was in possession of 3M masks, KHN again contacted Fully Promoted in December 2020 regarding its current capacity to provide 300,000 3M NIOSH-certified N95 masks.

56. KHN specifically inquired into the status of Fully Promoted's negotiations with 3M to become a certified 3M distributor and whether it was able to sell 3M manufactured N95 masks. Fully Promoted represented it was able to sell 3M manufactured N95 masks.

57. Fully Promoted further claimed it had NIOSH-certified 3M-manufactured masks available to it; that these masks were already in the United States; and that Fully Promoted could ship these NIOSH-certified 3M-manufactured masks to KHN within a matter of days.

58. On December 10, 2020, KHN ordered 300,000 3M NIOSH-certified N95 masks from Fully Promoted at a cost of $1,185,000. Fully Promoted's Order Confirmation clearly and unequivocally represents that the order was to consist of "3M™ Medical N95" Masks (the "December 2020 Order"). A true and accurate copy of Fully Promoted's December 2020 Order Confirmation is attached as Exhibit B.

59. After receiving the December 2020 Order, KHN began fit-testing its employees for the provided masks in compliance with OSHA specifications. KHN incurred approximately $20,000 in costs and expenses in fit-testing employees.

60. While engaged in fit-testing and training for its employees, KHN learned for the first time of problems with the masks.

61. For example, a KHN employee suffered an allergic reaction to the masks during the fit-testing process which rendered the employee unable to wear the masks from the December 2020 Order.

62. When KHN notified Fully Promoted of the allergic reaction on December 28, 2020, Fully Promoted feigned ignorance as to the potential cause of the reaction, reiterated that the masks were legitimate and authentic and provided KHN with a 3M "Technical Specification Sheet."

63. On information and belief, Fully Promoted downloaded the technical specification sheet from the internet, and it was unrelated to the masks Fully Promoted actually shipped to KHN.

64. As KHN continued to fit-test its employees for the masks, further concerns were raised about the masks' authenticity. Specifically, a KHN employee learned that 3M had published a warning regarding counterfeit 3M N95 masks being sold and identified with specific 3M lot numbers. Cross-referencing the lot numbers provided with the December 2020 Order, KHN discovered that the lot numbers matched the lot numbers identified as counterfeit in 3M's warning.

65. On January 13, 2021, KHN emailed Fully Promoted that "facilities [are] reaching out with concern that the 3M mask [sic] we have are counterfeit. We need verification that the product we have is not counterfeit. Can you provide paperwork to verify the quality of the product we have received."

66. In response, Fully Promoted provided numerous falsified documents in an effort to further its deception and assuage KHN's concerns. Specifically, Fully Promoted provided a falsified report, purportedly prepared by SGS S.A., a company specializing in inspection, verification, testing and certification services, and represented that his report would "show where the masks are from."

67. Fully Promoted also provided a falsified "3M Authorization Certificate," and other certification documents in an effort to conceal its fraud and assuage KHN's concerns.

68. KHN, in turn, forwarded this documentation to 3M for confirmation of its authenticity.

11

On January 18, 2021, 3M responded to KHN and stated that the product is "suspicious and we recommend that you DO NOT use product from this seller," and that it would conduct a further review to confirm.

69. On January 27, 2021, 3M followed up with KHN and stated unequivocally that "**the product from this seller is counterfeit and we recommend you DO NOT use product from this seller**."

70. Upon confirmation from 3M that the masks provided by Fully Promoted were counterfeit, KHN promptly removed the counterfeit masks from its hospitals and facilities.

71. When KHN provided 3M's confirmation that the masks were counterfeit to Fully Promoted, Fully Promoted admitted for the first time it did not use "normal distribution channels" to secure the masks. This admission stands in direct contradiction to Fully Promoted's prior representations made to KHN over the course of several months that it was working with 3M to secure the masks including "daily communications" with 3M, providing 3M with "huge amounts of documentation," and allowing 3M to "vet [Fully Promoted] as a corporation."

72. Contrary to its numerous representations, Fully Promoted never worked with 3M to secure masks on behalf of KHN.

73. Having discovered that Fully Promoted's prior representations as to the source and legitimacy of the December 2020 Order of masks were false, on February 8, 2021, KHN demanded a full refund. Fully Promoted refused.

74. Again on March 8, 2021, Fully Promoted demanded a full refund. Again, Fully Promoted refused to do so and suggested that the counterfeit masks could somehow still be considered legitimate 3M NIOSH-certified N95 masks.

75. Given Fully Promoted's refusal to provide a refund, KHN had no choice but to

file this lawsuit against Fully Promoted. Per OSHA regulations, KHN is obligated to use NIOSH-certified N95 masks. Instead, in exchange of its payment of $1,185,000.00, KHN now has approximately 300,000 useless, counterfeit masks that it cannot use for any purpose. Despite clear confirmation from 3M that the masks are counterfeit, Fully Promoted continues to insist that the masks could somehow still be legitimate and refuses to refund KHN until Fully Promoted has the opportunity to re-sell these counterfeit masks to unsuspecting third-parties. KHN has refused to be a part of Fully Promoted's scheme to double-down on its fraud and sell these masks to yet another unsuspecting victim. Not only has Fully Promoted refused to refund the full purchase price of the December 2020 Order, KHN incurred additional damages when it engaged in fit-testing several hundred employees on the counterfeit masks at an approximate cost of $20,000.00. In short, KHN does not have the masks it requires, has incurred more than $1.2 million in damages, and is unable to secure a refund of those funds.

## COUNT I – BREACH OF CONTRACT

76. KHN incorporates the foregoing paragraphs as if set forth herein.

77. In March 2020, KHN entered into a contract with Fully Promoted, who agreed to provide 330,000 NIOSH certified N95 masks in exchange for the purchase price of $1,164,000.

78. KHN fully performed by paying the full purchase price to Fully Promoted.

79. Fully Promoted failed to perform at all thereby materially breaching the contract.

80. KHN demanded a full refund, but, to date, Fully Promoted has yet to fully refund $46,700.00 of the purchase price.

81. KHN has suffered damages as a result of Fully Promoted's breach.

82. KHN entered into a second contract in December 2021 with Fully Promoted, who agreed to provide 300,000 "3M™ Medical N95" masks in exchange for the purchase price of

13

$1,185,000.00.

83. KHN fully performed its obligation paying the purchase price of $1,185,000.00.

84. Fully Promoted breached when it failed to deliver 3M manufactured, NIOSH-certified N95 masks, but instead provided counterfeit 3M masks that are not NIOSH certified.

85. KHN has demanded a full refund, but, to date, Fully Promoted has failed to refund any of the $1,185,000.00.

86. KHN incurred approximately $20,000.00 fit-testing the masks before discovering they were counterfeit.

87. KHN has incurred additional consequential damages as a result of storing, testing, and attempting to return the masks. Accordingly, KHN has been damaged in excess of $1.2 million.

88. As a result of KHN's breaches, KHN has suffered immediate and irreparable harm and will continue to suffer immediate and irreparable harm unless and until the purchase price is returned and/or genuine 3M NIOSH-certified N95 masks are provided.

## COUNT II – FRAUD AND FRAUD IN THE INDUCEMENT

89. KHN incorporates the foregoing paragraphs as if set forth herein.

90. With respect to the March 2020 Order, Fully Promoted made numerous false statements to KHN concerning the availability of the N95 masks as well as its efforts to secure the N95 masks. For example, Fully Promoted represented that its vendor for this order was one of Fully Promoted's "preferred vendors" that it did business with "on a regular basis." Fully Promoted further represented that the vendor had "FDA approval" and that the Masks were NIOSH-certified. These assertions were false at the time Fully Promoted made them, and/or Fully Promoted made the statements with utter disregard and recklessness regarding their truth or

falsity.

91. In reliance on Fully Promoted's false representations, KHN authorized Fully Promoted to secure the N95 masks and paid Fully Promoted the full purchase price for the March 2020 Order.

92. When Fully Promoted proved unable to deliver any N95 masks in connection with the March 2020 order, it again made numerous false representations regarding its ongoing efforts with Honeywell and 3M rather than refund KHN the purchase price.

93. By way of example, Fully Promoted represented it was now sourcing the N95 masks directly from Honeywell, and that it was "negotiating the delivery timing of the masks to [KHN] next week." Later, when it proved unable to secure Honeywell N95 masks, Fully Promoted represented that it was working closely with 3M, that it was in regular communications with the [3M] attorneys," that the attorneys were from the law firm Holland & Knight, and that the ongoing delay was merely the result of "paper pushing and them vetting [Fully Promoted] as a corporation."

94. These representations were false at the time Fully Promoted made them, and/or Fully Promoted made the statements with utter disregard and recklessness regarding their truth or falsity.

95. Fully Promoted intended that KHN rely on these false representations and to enter into agreements with it regarding N95 masks.

96. KHN relied on these representations by allowing Fully Promoted to retain the March 2020 Order purchase price of $1,164,600 for nearly five months. Absent Fully Promoted's false representations, these funds could have been used to secure vital PPE equipment during the spring and summer of 2020. Further, Fully Promoted continues to refuse

to fully refund the purchase price, and still holds $46,700.00.

97. Fully Promoted made false statements to KHN regarding its relationship with 3M, its ability to source 3M, NIOSH-certified N95 masks, and the authenticity of the masks it provided to KHN. These false statements were material to the December 2020 Order.

98. Fully Promoted knew these statements were false at the time Fully Promoted made them, and/or Fully Promoted made the statements with utter disregard and recklessness regarding their truth or falsity.

99. Fully Promoted intended that KHN rely on these false representations.

100. KHN did reasonably rely on Fully Promoted's representations to its detriment by, among other things, entering into the agreement to purchase 300,000 3M NIOSH-certified N95 masks and paying the sum of $1,185,000.00.

101. As a direct result of Fully Promoted's false statements, KHN has suffered damages related to the December 2020 Order including but not limited to the $1,185,000.00 purchase price of the counterfeit masks as well as significant costs involved in fit-testing its employees for the counterfeit masks prior to discovery Fully Promoted's fraud.

102. Unless Fully Promoted is ordered to return all funds stolen from KNH, as well as any real and personal property purchased therewith, and enjoined and restrained from further transferring or dissipating those funds and properties, KHN will suffer actual and irreparable harm for which it has no adequate remedy at law.

## COUNT III – NEGLIGENT MISREPRESENTATION

103. KHN incorporates the foregoing paragraphs as if set forth herein.

104. Fully Promoted, in the course of its business, supplied false information to KHN including, but not limited to, its misrepresentations regarding its purported relationship with 3M,

16

its ability to source 3M, NIOSH-certified N95 masks, and the authenticity of the masks it provided to KHN.

105. Fully Promoted failed to exercise reasonable care or competence in obtaining and communicating information regarding its relationship with 3M, its ability to source 3M, NIOSH-certified N95 masks, and the authenticity of the masks it provided to KHN.

106. KHN justifiably relied on Fully Promoted's negligent misrepresentations to its detriment.

107. As a result of Fully Promoted's negligent misrepresentations, KHN has suffered damages.

### COUNT IV – CONVERSION

108. KHN incorporates the foregoing paragraphs as if set forth herein.

109. As set forth above, Fully Promoted engaged in a fraudulent scheme whereby it willfully and maliciously stole approximately $1,231,700.00 from KHN.

110. Fully Promoted has no legal right to retain these funds and has willfully, maliciously and wrongfully exercised dominion and control over the funds by unlawfully retaining and spending those amounts despite KHN's demands for the same.

111. Due to Fully Promoted's intentional, willful and malicious actions set forth herein, it should be held liable to KHN for the full amount it stole and retained, plus prejudgment and postjudgment interest, punitive damages, attorney fees, and all other relief deemed appropriate by the Court.

112. Unless Fully Promoted is ordered to return all funds stolen from KNH, as well as any real and personal property purchased therewith, and enjoined and restrained from further transferring or dissipating those funds and properties, KHN will suffer actual and irreparable

harm for which it has no adequate remedy at law.

## COUNT V – REPLEVIN

113. KHN incorporates the foregoing paragraphs as if set forth herein.

114. Fully Promoted misappropriated over $1.2 million dollars from KHN in connection with (1) the March 2020 Order through its representations regarding its ability to deliver NIOSH-certified N95 masks and, (2) with respect to the December 2020 Order, through its false representations regarding the legitimacy of the masks.

115. Fully Promoted has no legal right to retain the funds stolen from KHN, nor any real and/or personal property purchased therewith, and have converted those funds to its personal use. Fully Promoted has the legal right to possession of the stolen funds.

116. Unless Fully Promoted is ordered to return to KHN the funds stolen from KHN and are enjoined and restrained from further dissipating, transferring, assigning or otherwise depleting those funds and property, KHN will suffer actual and irreparable harm for which it has no adequate remedy at law.

## COUNT VI – UNJUST ENRICHMENT

117. KHN incorporates the foregoing paragraphs as if set forth herein.

118. The KHN funds stolen by Fully Promoted constitute a benefit to Fully Promoted in the amount of $1,231,700.00.

119. By willfully and maliciously refusing to return the full amount of stolen funds, Fully Promoted has been unjustly and inequitably enriched at KHN's expense.

120. Due to the intentional, willful and malicious nature of its actions, Fully Promoted should be held liable to KHN for the full amount stolen and retained by Fully Promoted, but in no event less than $1,231,700.00, plus prejudgment and postjudgment interest, punitive damages,

attorney fees, and all other relief deemed appropriate by the Court.

    121.    Unless Fully Promoted is directed to immediately transfer to KHN all funds stolen by Fully Promoted and all personal and real property purchased with those funds, and enjoined and restrained from further dissipating, transferring, assigning or otherwise depleting those funds and property, KHN will suffer actual and irreparable harm for which it has no adequate remedy at law.

    WHEREFORE, plaintiff KHN demands relief and judgment against defendant Fully Promoted as follows:

1. That a preliminary and permanent injunction be issued against Fully Promoted preventing it from accessing, dissipating, transferring, assigning, selling or otherwise depleting the approximately $1,231,700.00 in KHN funds that were willfully and maliciously stolen and retained by Fully Promoted, or the real and personal property purchased by Fully Promoted with those funds;

2. That a preliminary and permanent injunction be issued against Fully Promoted forcing it to disburse to KHN the approximately $1,231,700.00 in KHN funds willfully and maliciously stolen and retained by Fully Promoted;

3. That a constructive trust be placed on the $1,231,700.00 in KHN funds willfully and maliciously stolen and retained by Fully Promoted, preventing it from accessing, dissipating, transferring, assigning or otherwise depleting those funds or the real and personal property purchased therewith;

4. That judgment be entered in favor of KHN and against Fully Promoted for compensatory damages in an amount exceeding $1,249,764.00, together with interest, punitive damages, and such other and further relief including, but not limited to, pre-

judgment and post-judgment interest, attorney's fees, and costs.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Respectfully submitted,

*s/ Eric W. Richardson*
Eric W. Richardson (0066530)
    Trial Attorney
Jacob D. Mahle (0080797)
Clifford W. Lauchlan (0092357)
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Tel: (513) 723-4000
Fax: (513) 852-7885
ewrichardson@vorys.com
bdcraft@vorys.com
cwlauchlan@vorys.com

*Attorneys for Plaintiff*