UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KETTERING ADVENTIST HEALTHCARE, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:21-cv-136 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| JADE DESIGNS, LLC, D/B/A FULLY PROMOTED, *et al*. | : | |
| | : | |
| Defendants, | : | |

---

**ENTRY AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(3) FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE (DOC. NO. 9)**

---

Kettering Adventist Healthcare ("KHN") brought the instant Complaint (Doc. No. 1) (the "Complaint"), against Jade Design, LLC, d/b/a Fully Promoted ("Fully Promoted") and Jennifer Snyder ("Snyder") (collectively, "Defendants"), alleging several causes of action. Presently before the Court is Defendants' Motion to Dismiss (the "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3). (Doc. No. 9.) In the Motion, Defendants argue that this Court lacks personal jurisdiction over them, that venue is improper, and, in the alternative, that this case should be transferred to the Federal District Court of Colorado. (*Id.*) In its opposition (Doc. No. 11) (the "Response"), KHN argues that the Court has specific jurisdiction over Defendants and that venue is appropriate in the Southern District of Ohio. (*Id.*)

No party has requested an evidentiary hearing on the Motion, and the Court will not hold one. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (district courts have discretion

1

in determining whether to decide a Rule 12(b)(2) motion with or without holding an evidentiary hearing). For the reasons discussed below, the Court **DENIES** the Motion.

I. <u>**BACKGROUND**</u>

On May 3, 2021, KHN filed its Complaint against Defendants in the Southern District of Ohio pursuant 28 U.S.C. § 1332. (Doc. No. 1.) The Complaint alleges that in March of 2020 KHN began communicating with Defendants, who are located in Colorado, in an effort to secure personal protective equipment ("PPE"). (*Id*. at PageID 4.) Defendants represented that they would be able to provide KHN with N95 masks. (*Id*.) N95 masks are an approved form of respiratory protection and are tested and approved by the National Institute of Occupational Safety and Health ("NIOSH"). (*Id*. at PageID 3.) N95 masks are subject to extensive review and certification is a time-intensive process. (*Id*. at PageID 3-4.)

Defendants represented that they could obtain 30,000 masks for KHN. (*Id*. at PageID 4.) On March 20, 2020, Defendants provided KHN with an order confirmation and KHN wired Defendants the purchase price of $86,700. (*Id*. at PageID 5.) Subsequently, KHN sought to obtain additional masks, and, on March 24, 2020, Defendants represented that they could obtain an additional 300,000 masks. (*Id*.) Defendants represented that all of the masks were NIOSH certified and provided an FDA "Certification of Registration." (*Id*. at PageID 6.) On March 27, 2020, KHN wired an additional $1,077,900 pursuant to an order confirmation from Defendants for the additional 300,000 masks. (*Id*.)

During this time, Defendants offered to provide KHN with other medical supplies, including: KN95 masks, isolation gowns, thermometers, alcohol pads, and other items. (Doc. No. 11, Gillum Decl., at ¶¶ 7-8, Ex. 5-6.) On March 31, 2020, KHN purchased alcohol pads from Defendants. (*Id*. at Gillum Decl., at ¶ 11.)

Over the course of the next five months, Defendants represented to KHN that they were unable to deliver the previously ordered masks due to transportation issues and that they were working with other sources to obtain the masks. (Doc. No. 1 at PageID 7.) Defendants stated at various points that they were working with Honeywell and 3M to secure NIOSH-certified masks. (*Id*. at PageID 7-8.) In August of 2020, KHN asked for a full refund of the March 2020 mask orders. (*Id*. at PageID 9.) Defendants refunded part of the purchase price for the initial order, but withheld the remainder of the funds. (*Id*.) Defendants encouraged KHN to contact them again if future PPE needs arose and represented that their corporate offices had been able to obtain 3M-made N95 masks. (*Id*.)

With a second wave of COVID-19 cases in December 2020, KHN again reached out to Defendants to inquire about their ability to secure 300,000 N95 masks. (*Id*.) Defendants stated that they had 3M-manufactured masks available and, on December 10, 2020, KHN ordered 300,000 3M-manufactured NIOSH-certified N95 masks at a cost of $1,185,000. (*Id*. at PageID 10.) The order was delivered in December of 2020 and KHN began fit-testing the masks. (*Id*.) During this testing, KHN employees began to notice issues with the masks, including one employee suffering an allergic reaction to the mask. (*Id*.) On January 13, 2021, KHN contacted Defendants regarding its concerns. (*Id*. at PageID 11.) In response, Defendants provided a number of allegedly falsified 3M technical and verification documents. (*Id*.) KHN forwarded this documentation to 3M, who confirmed that the masks were counterfeits. (*Id*. at PageID 11-12.) In February and March of 2021, KHN demanded a full refund for the December 2020 order and Defendants refused. (*Id*.)

The Complaint alleges six counts: breach of contract, fraud and fraud in the inducement, negligent misrepresentation, conversion, replevin, and unjust enrichment. (Doc. No. 1 at PageID

13-19.) On July 2, 2021, Defendants filed the instant Motion pursuant to Fed. R. Civ. P. 12(b)(2)-(3), arguing that this Court does not have personal jurisdiction over them, that venue is improper, and, in the alternative, that this action should be transferred to the Federal District Court of Colorado. (Doc. No. 9.) On August 6, 2021, KHN filed its Response. (Doc. No. 11.) On August 20, 2021, Defendants filed their reply. (Doc. No. 12.) The Motion is fully briefed and ripe for decision.

## II.     STANDARD OF REVIEW

The party seeking to establish a court's personal jurisdiction over an opposing party bears the burden of showing that such jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 547 (6th Cir. 2016) ("[t]he plaintiff bears the burden of establishing the existence of personal jurisdiction"). When a court resolves a "Rule 12(b)(2) motion solely on written submissions,[1] the plaintiff's burden is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners*, 836 F.3d at 548-49 (internal quotation marks omitted). "The plaintiff meets this burden by setting forth specific facts showing that the court has jurisdiction." *Id.* (internal quotation marks omitted). "The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the controverting assertions of the party seeking dismissal." *Id.* (internal quotation marks omitted); *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) ("[i]n deciding a motion to dismiss for want of personal jurisdiction, the court must, of course, view the affidavits, pleadings, and documentary evidence in the light most favorable to the plaintiff," and the court

---

[1] A different standard applies when the Court has conducted an evidentiary hearing. *Theunissen*, 935 F.2d at 1458.

may also consider "undisputed factual representations of the" moving party that "are consistent with the representations of the" non-moving party).

When a party challenges venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that the current venue is proper. *Ring v. Roto-Rooter Servs. Co.*, No. 1:10-CV-179, 2010 U.S. Dist. LEXIS 108202, at *9 (S.D. Ohio Sept. 28, 2010); *Contech Bridge Sols., Inc. v. Keaffaber*, 2011 U.S. Dist. LEXIS 122875, at *33, 2011 WL 5037210 (S.D. Ohio Oct. 24, 2011). The district court has the discretion to decide the appropriate procedure for deciding a motion to dismiss for improper venue. *Ring*, 2010 U.S. Dist. LEXIS 108202, at *9; *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002). Where a motion is decided solely on the pleadings and attached affidavits, viewed in the light most favorable to the plaintiff, plaintiff need only present a *prima facie* case that venue is proper. *Ring*, 2010 U.S. Dist. LEXIS 108202, at *9; *Barton v. Florida*, 2006 U.S. Dist. LEXIS 68815, at *5, 2006 WL 2773238 (S.D. Ohio Sept. 25, 2006).

### III. ANALYSIS

#### A. Personal Jurisdiction

Defendants argue that an attempt by this Court to exercise personal jurisdiction over them is not consistent with due process. (Doc. No. 9 at PageID 40.) KHN argues this Court has specific jurisdiction over Defendants because the requirements of due process have been satisfied. (Doc. No. 11 at PageID 58.) The Court agrees that the requirements of due process have been satisfied and it has specific jurisdiction over the Defendants.

#### 1) Overarching principles of personal jurisdiction

"To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe*, 89 F.3d at 1262; *see also Ford Motor Co. v. Montana Eighth Jud.*

*Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant"). A tribunal's authority to exercise personal jurisdiction over a defendant "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor*, 141 S. Ct. at 1024 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). The focus of that analysis is "on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017)). That focus led to the recognition of two kinds of personal jurisdiction: general and specific. *Ford Motor*, 141 S. Ct. at 1024. The difference between them is in the "nature of the [defendant's] contacts." *CompuServe*, 89 F.3d at 1263.

General jurisdiction can be exercised "only when a defendant is essentially at home in the State." *Ford Motor*, 141 S. Ct. at 1024 (internal quotation marks omitted). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (emphasis in original). In other words, the claim "need not relate to the forum State or the defendant's activity there; [the claim] may concern events and conduct anywhere in the world." *Ford Motor*, 141 S. Ct. at 1024. However, "[o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction." *Id.* (internal quotation marks omitted). Specifically, an individual "is subject to general jurisdiction in her place of domicile" and a corporation is subject to general jurisdiction in "its place of incorporation and principal place of business." *Id.*

This Court also notes that "[t]he Ohio legislature recently revised the state's long-arm statute to permit general jurisdiction over non-resident defendants where it was not recognized

6

before." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, No. 3:21-CV-14, --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 93056, 2021 WL 1964613, at *2 n. 2 (S.D. Ohio May 17, 2021); *see* Ohio Rev. Code § 2307.382(C) ("In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution"). Prior to the statute's amendment (which became effective within the past year), "[c]ourts construed the statute as foreclosing general jurisdiction because personal jurisdiction was only proper if the plaintiff's claim arose out of one of the statutorily identified actions" in its division (A). *Premier Prop. Sales Ltd.*, 2021 WL 1964613, at *2 n. 2.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor*, 141 S. Ct. at 1024. The court's exercise of jurisdiction "must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners*, 836 F.3d at 549. The Sixth Circuit has established a three-part test for determining whether such jurisdiction may be exercised under the Due Process Clause:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (citing *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Regarding the first requirement (i.e., authorization by the forum State's long-arm statute), the forum state in this case is Ohio. Ohio's long-arm statute is set forth at Ohio Rev. Code § 2307.382. Under that long-arm statute, a court may exercise personal jurisdiction over a person if

7

the cause of action arose from at least one of nine categories set forth in the subsections of the statute's division (A). Ohio Rev. Code § 2307.382(A).

Regarding the second requirement (i.e., the exercise of jurisdiction is in accordance with the Due Process Clause of the Fourteenth Amendment), the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor*, 141 S. Ct. at 1024 (internal quotation marks omitted and alteration adopted). "The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* (internal quotation marks omitted). "They must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering into a contractual relationship centered there." *Id.* (internal quotation marks omitted). "Yet even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases." *Id.* The claim "must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted and alteration adopted). Finally, the actions of the defendant must be of such consequence that the exercise of jurisdiction over the defendant is reasonable. *Id*.

### 2) Application of specific jurisdiction – Due Process

The parties agree that Defendants are not subject to general jurisdiction in Ohio. (Doc. No. 9 at PageID 39-40; Doc. No. 11 at PageID 60.) Moreover, the parties agree that requirements of Ohio's long arm statute are satisfied. (Doc. No. 9 at PageID 43; Doc. No. 11 at PageID 57-58.) Therefore, the Court need only address whether its exercise of specific jurisdiction over Defendants comports with the requirements of the Due Process Clause.

### i. Purposeful Availment

In order to exercise personal jurisdiction over an out-of-state defendant, the Court must determine whether the Defendants have purposefully availed themselves of "the privilege of acting in the forum state or causing a consequence in the forum state." *Air Prods.*, 503 F.3d at 551. Purposeful availment is the "constitutional touchstone of personal jurisdiction" and it exists where the defendant's contacts with the forum, "proximately result from actions by the defendant himself that create a substantial connection with the forum State . . . and where the defendant's conduct and connections with the forum are such that he should reasonably anticipate being haled into court there." *AlixPartners*, 836 F.3d at 550 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)) (internal quotation marks omitted). For instance, where a party creates a continuing obligation in the state or where a business relationship is intended to be ongoing in nature. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017); *Air Prods.*, 503 F.3d at 551; *AlixPartners*, 836 F.3d at 550.

Defendants argue that they have not availed themselves of the privilege of acting or causing a consequence in Ohio because their only efforts in the forum were initiated by and directed toward KHN. (Doc. No. 9 at Page ID 41.) Defendants further argue that their contract with KHN alone is insufficient to establish specific jurisdiction. (*Id.*) In response, KHN argues that Defendants' repeated communications with KHN sought to expand their business and carry on an effort to defraud KHN. (Doc. No. 11 at PageID 60-61.)

Defendants initial contacts with Ohio were certainly brought about by KHN's efforts to secure masks. However, the allegations in KHN's Complaint and the facts alleged in the affidavit demonstrate that Defendants actively sought to establish a connection with KHN that would be more than a "one-shot affair." *See CompuServe*, 89 F.3d at 1265. Defendants, of their own volition, informed KHN that they could obtain KN95 masks, isolation gowns, thermometers,

9

alcohol pads, and other medical items, in an apparent attempt to get KHN to purchase more medical supplies and expand its relationship with Defendants. (Doc. No. 11, Gillum Decl., at ¶ 8, Ex. 6.) Moreover, Defendants encouraged KHN to contact them if it needed additional PPE and Defendants were ultimately successful in obtaining another contract for masks with KHN. (Doc. No. 1 at PageID 9-10.) Finally, Defendant actually delivered alcohol pads and masks for KHN's use. (*Id*. at PageID 10.) Throughout this entire time, Defendants had to be aware that KHN was located in Ohio because they intended to deliver goods to KHN.

Moreover, the existence of intentional tortious conduct enhances a party's other contacts with the forum state for purposes of a purposeful availment analysis. *Air Prods.*, 503 F.3d at 553; *Alig-Mielcarek v. Jackson*, No. 2:11-CV-255, 2014 U.S. Dist. LEXIS 8569, at *8-9, 2014 WL 272181 (S.D. Ohio Jan. 23, 2014). KHN consistently alleges that Defendants sent multiple fabricated technical and verification documents related to its mask order, in addition to the allegedly counterfeit masks themselves. (*See* Doc. No. 1.) Taken in the light most favorable to KHN, Defendants would have known that the harm from their efforts to defraud KHN through the use of fabricated documents and counterfeit masks would have their focal point in Ohio. *See Air Prods.*, 503 F.3d at 553 ("Defendants also undoubtedly knew that Air Products had its principal place of business in Michigan, and that the focal point of its actions and the brunt of the harm would be in Michigan.").

It is clear from Defendants' efforts to solicit more business from KHN that they sought to establish a business relationship with KHN that went beyond one mask order and was intended to be ongoing. Moreover, Defendants would have known that their alleged efforts to defraud KHN would be felt most keenly in Ohio. Therefore, the purposeful availment prong is satisfied.

### ii. Arising From

The second prong of the due process test asks whether KHN's claims "arise from" the

defendant's contacts with the state. *Air Prods.*, 503 F.3d at 553. This requires that defendant's contacts be "related to the operative facts of the controversy." *Schmuckle*, 854 F.3d at 903. This is a "lenient standard" that is satisfied if the cause of action has a substantial connection to a defendant's activities in the state. *Id.*; *AlixPartners*, 836 F.3d at 552.

Defendants argue that this prong is not satisfied because Defendants' Ohio activities are minimal if not non-existent. (Doc. No. 9 at PageID 42.) Defendants argue that the sales invoices, emails, and arrangements for the delivery of the masks all occurred in Colorado and the only Ohio activities were caused by KHN's actions. (*Id.*) In response, KHN argues that Defendants spent months sending communications to Ohio regarding the legitimacy of the masks and actually injected counterfeit masks into Ohio. (Doc. No. 11 at PageID 63-64.)

KHN's claims arise directly from Defendants contacts with Ohio. The claims alleged by KHN relate to Defendants' failure to deliver conforming masks pursuant to the contract, misrepresentations regarding the masks, and Defendants' retention of money for masks that were not delivered or were counterfeit. All of these claims have their basis in Defendants' efforts to sell masks to KHN and their accompanying efforts to misrepresent the authenticity of those masks. Defendants' breach of contract naturally arises from its contacts with Ohio. *Contech Bridge*, 2011 U.S. Dist. LEXIS 122875, at *28-29 (finding the arising from prong was satisfied where the plaintiff's claims stemmed from the defendant's breach of contract). Moreover, KHN's remaining claims stem from the breach of contract claim and Defendants' alleged efforts to cover-up the breach. Therefore, the "arising from" prong is satisfied.

### iii. Reasonableness

The Court must finally address the reasonableness prong. The Court must determine whether exercising personal jurisdiction over Defendants "would comport with traditional notions of fair play and substantial justice." *AlixPartners*, 836 F.3d at 552; *CompuServe*, 89 F.3d at 1267-

68. Where, as here, the first two prongs have been met, "only an unusual case will not meet the third criterion." *AlixPartners*, 836 F.3d at 552. In determining whether the exercise of personal jurisdiction is reasonable, the Court considers the following facts: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy. *Air Prods.*, 503 F.3d at 554-55.

Defendants argue that the burden of litigating in Ohio is prohibitively high. (Doc. No. 9 at PageID 42.) They further argue that "Ohio does not have particular cognizable interest in adjudicating the dispute." (*Id*. at PageID 43.) In response, KHN argues that Defendants entered into a contract to supply masks to an Ohio-based hospital and engaged in fraud in the process. (Doc. No. 11 at PageID 64-65.) KHN further argues that Ohio has an interest in adjudicating frauds perpetrated against Ohio residents. (*Id*.)

While it would undoubtedly be a burden for Defendants to litigate this action in Ohio, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987). Moreover, specific jurisdiction has been upheld even where doing so forced the defendant to travel. *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003); *Air Prods.*, 503 F.3d at 555 (holding that it was permissible to require the defendants to travel from Kansas to Michigan for the litigation); *AlixPartners*, 836 F.3d at 552 ("the fact that [the defendant] lives in Texas does not overcome the inference of reasonableness").

Additionally, Defendants' contention that Ohio does not have an interest in this dispute is meritless. The state has an interest in protecting its citizens from fraud and misrepresentations. *See Betco Corp. v. Peacock*, No. 3:12-CV-1045, 2014 U.S. Dist. LEXIS 25972, at *22-23, 2014

12

WL 809211 (N.D. Ohio Feb. 28, 2014); *Duncan-Williams, Inc. v. Capstone Dev., LLC*, Nos. 09-2098; 09-2109, 2010 U.S. Dist. LEXIS 68005, at *29-30, 2010 WL 2710400 (W.D. Tenn. July 7, 2010). The Complaint alleges that Defendants directed false technical and verification documents to KHN to perpetuate a fraud. Indeed, the perpetuation of this fraud allegedly resulted in counterfeit masks arriving in Ohio and injuring Ohio residents. Ohio undoubtedly has an interest in protecting its residents from bodily harm, such as allergic reactions caused by counterfeit masks. Indeed, it is Colorado that has little interest in resolving the issues at play here. Moreover, KHN clearly has an interest in obtaining relief in Ohio.

Therefore, the Court concludes the exercise of personal jurisdiction over Defendants is reasonable.

> **3) Venue**

Defendants further contend that the Southern District of Ohio is an improper venue for the adjudication of this action because a substantial part of the events giving rise to this matter occurred elsewhere. (Doc. No. 9 at PageID 43-44.) The Court disagrees and finds that venue is proper in the Southern District of Ohio.

> **i. Improper Venue**

Once venue has been challenged, the plaintiff bears the burden of establishing that the current venue is proper. *Contech Bridge*, 2011 U.S. Dist. LEXIS 122875, at *33. Whether venue is proper is governed by 28 U.S.C. § 1391, which states an action may brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

13

28 U.S.C. § 1391(b)(1)-(3).

KHN argues that venue is proper under § 1391(b)(2). (Doc. No. 11 at PageID 65.) When interpreting § 1391(b)(2), the focus of the Court's inquiry is on the word "substantial." *Contech Bridge*, 2011 U.S. Dist. LEXIS 122875, at *33. The Sixth Circuit has clarified that "[t]he fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998) (quoting David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause 2, 28 U.S.C. § 1391 (1993)).

Moreover, where, as here, the action involves a contractual dispute, the Court will also look to "(1) where the contract was negotiated and executed, (2) where the contract was performed, and (3) where the alleged breach occurred." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 766 (S.D. Ohio 2014); *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-2044, 2016 U.S. Dist. LEXIS 49745, at *7 (S.D. Ohio Apr. 13, 2016); *Alter v. Schafer*, No. 2:16-CV-785, 2017 U.S. Dist. LEXIS 152981, at *7, 2017 WL 4168352 (S.D. Ohio Sept. 20, 2017). The Court may further "consider where the effects of a defendant's alleged breach are experienced." *Reilly*, 6 F. Supp. 3d at 766.

Here, Defendants argue that venue is improper because they are not residents of the Southern District of Ohio and a substantial part of the events giving rise to the claims took place outside of this judicial district. (Doc. No. 9 at PageID 44.) KHN argues that venue is appropriate because the counterfeit masks were sent to and used by its employees in Ohio and the effects of KHN being defrauded of over $1 million dollars has been felt in Ohio. (Doc. No. 11 at PageID

66.) In response, Defendants argue that they "accepted [KHN]'s orders for masks in Colorado, created sales invoices in Colorado, and sourced masks in Colorado." (Doc. No. 12 at PageID 167.) Therefore, according to Defendants, Colorado is the only venue where a substantial part of the events giving rise to this action took place. (*Id*.)

Defendants' contention that Colorado is the *only* venue where substantial activities giving rise to this action took place is similarly meritless. As discussed below, while Colorado may be an appropriate venue for this action, that does not render it the only venue capable of adjudicating this matter. Defendants are mistaken in their position that venue is only proper where a substantial *part* of the events giving rise to the action occurred. Instead, the question is simply whether substantial *activities* took place in the relevant venue. *See Bramlet*, 141 F.3d at 263. While more of the events may have occurred in one district that does not eliminate another district as an appropriate venue for the purposes of § 1391(b)(2). *Id*.

In this case, substantial activities giving rise to this action did occur in the Southern District of Ohio. Defendants negotiated the terms of the purchase of masks with KHN, a hospital network they knew was in Ohio. Moreover, while the acceptance of the order and sourcing of the masks may have taken place in Colorado, Ohio was the place of performance, i.e., where the masks were delivered. The effects of Defendants' alleged breach were also felt in Ohio by way of the non-conforming masks. Finally, the corresponding impact of Defendants' alleged efforts to defraud KHN through the use of falsified technical and verification documents occurred in Ohio.

Therefore, the Court concludes that the Southern District of Ohio is a proper venue for this action.

## ii. Transfer Venue

In the alternative, Defendants ask that this Court transfer this action to the Federal District

15

Court of Colorado. (Doc. No. 9 at PageID 44.) Motions to transfer are governed by 28 U.S.C. § 1404(a): "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Before determining whether the interests of justice justifies a transfer, the Court must first determine whether the proposed alternative venue is a district where the action might have been brought. *See* 28 U.S.C. § 1404(a). This prong is not in dispute, however, as Defendants are residents of Colorado; thus, the District of Colorado would be an appropriate venue. 28 U.S.C. § 1391(b)(1).

If an action could have been brought in the alternative venue, the Court must determine whether a transfer would "prevent wastes of time, energy and money, as well as whether a transfer would protect the litigants, witnesses and the public against unnecessary inconvenience and expense." *Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). Additionally, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608 612 (6th Cir. 1984)); *Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*, No. 1:20-CV-105, 2020 U.S. Dist. LEXIS 161335, at *13, 2020 WL 5250435 (S.D. Ohio Sept. 3, 2020) ("A plaintiff's choice of venue, however, holds great weight and should only be disturbed upon a significant showing that the public and private interests at stake weigh in favor of transfer."). Defendants have not made a significant showing that this matter should be transferred.

Defendants' primary argument is that KHN's resources "vastly outweigh those of Defendants." (Doc. No. 9 at PageID 44.) While this may be true, a transfer is not warranted where

16

the result simply shifts the inconvenience from one party to the other. *Contech Bridge*, 2011 U.S. Dist. LEXIS 122875, at *44. Defendants' only other argument is that the convenience of the parties and the interests of justice weigh in favor of transfer. Defendants fail to offer any reasons as to why this would be so.

The balance of interests, the location of witnesses and evidence, and the interest of justice all weigh in favor of Ohio. The counterfeit masks were delivered to Ohio and appear to remain in Ohio. Moreover, a number of witnesses reside in Ohio, such as the employees of KHN who allegedly ordered, received, tested, and were injured by the masks. While the convenience of witnesses who are employees is generally given less weight (*Zimmer Enters.*, 478 F. Supp. 2d at 991), Defendants have offered no reason as to why Colorado would be a more convenient forum, other than the fact Defendants reside there. This argument is insufficient.

Moreover, while a number of witnesses and documents may be not located in Ohio, it cannot be said that Colorado would be a more convenient venue. For instance, Defendants' franchisor, 3M, and Honeywell all appear to have a connection to this case that could lead to the need to obtain documents and depositions from those non-party entities. Those companies are headquartered in Florida, Minnesota, and North Carolina respectively. There is nothing in the briefing or the affidavits that suggests Colorado would be a better venue than Ohio for these witnesses, the related discovery, or a potential trial. Indeed, Defendants have generally failed to provide a sufficient reason as to why a transfer would be in the interest of justice beyond the banal comparison of the parties' resources.

Therefore, the Court concludes that a transfer is unwarranted and would not serve the interests of justice.

    **IV.**   **CONCLUSION**

The Court finds the following:

1. KHN has made the requisite *prima facie* showing that this Court has personal jurisdiction over the Defendants;

2. KHN has made the requisite *prima facie* showing that the Southern District of Ohio is a proper venue for this action; and

3. Transferring this action to the United States District Court for Colorado would not serve the interests of justice.

For the reasons stated above, the Court **DENIES** the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for Lack of Personal Jurisdiction and Improper Venue (Doc. No. 9).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, October 18, 2021.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE